UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America *ex rel.*        File No. 18-cv-01551 (ECT/HB)
Leslie Davis and John D. Westley,

       Relators,

v.

       **MEMORANDUM OPINION**
Hennepin County; Deborah Hedlund;        **AND ORDER**
Carol Molnau; Robert McFarlin;
Dan Dorgan; Mark Rosenker; Steve Lilley;
Ares Corporation; Wiss, Janey, Elstner
Associates; Sandia National Labs, LLC,

       Defendants.

---

Diana L. Longrie, Longrie Law Office, Maplewood, MN, for relators Leslie Davis and John D. Westley.

Chad A. Blumenfield and Erica MacDonald, United States Attorney's Office, Minneapolis, MN, for plaintiff the United States of America.

---

The False Claims Act ("FCA") includes a provision allowing the Government to dismiss an action if the relators (1) have been notified and (2) have had "an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The Government seeks to exercise that prerogative here and has filed a motion to dismiss. Relators were notified of the motion and a hearing was held. Relators oppose dismissal on two grounds. First, Relators argue that the Government waived its right to dismiss when it declined to intervene in the action. Second, Relators argue that, to be granted, the Government's motion to dismiss must be supported by a valid government purpose and a rational relation between dismissal and

accomplishment of the articulated purpose. The Government maintains that intervention is not a prerequisite to exercising its right to dismiss and that its right to dismiss is subject only to satisfying the notification and "opportunity for a hearing" requirements set forth in the plain text of 31 U.S.C. § 3730(c)(2)(A). In other words, the Government says that it need not show a valid purpose or rational basis to obtain dismissal. The law and practical considerations support the Government's position that it need not intervene in order to seek dismissal of an FCA case. On the separate question of what showing the Government must make, if any, to obtain dismissal, it does not matter which position is accepted. Though the law tilts in favor of the rule advanced by the Government, the Government here satisfies the test advocated by Relators. The Government's motion will be granted.

I

This is Relators' third *qui tam* FCA case against Defendants, and their second in the District of Minnesota. *See U.S. ex rel. Davis v. Hennepin Cty.*, No. 15-cv-2671 (RWP/CFB), 2016 WL 10747256 (D. Minn. July 8, 2016) ("*Davis I*"); *U.S. ex rel. Davis v. Hennepin Cty.*, No. 5:17-cv-81 (GRJ/RH), 2017 WL 4475938 (N.D. Fla. May 23, 2017) ("*Davis II*"). In each case, the allegations have been essentially the same: "that the various named Defendants conspired to cover up and conceal the true causes of the Minnesota Interstate 35 West bridge collapse so that Hennepin County could make false claims and thereby improperly secure various types of federal funding for the bridge's reconstruction." *Davis I*, 2016 WL 10747256, at *1; *accord Davis II*, 2017 WL 4475938, at *1; Compl. ¶ 16 [ECF No. 1].

Some additional detail about Relators' allegations is appropriate, because part of the Government's rationale for dismissal—to the extent it must have one—is that the "factual sequence of events" suggested by Relators "appears unlikely." Mem. in Supp. at 5 [ECF No. 12]. Relators allege that they have "specific information," which they do not divulge in their complaint, that "local governmental officials conspired to cover up and conceal the causes of the Interstate 35W bridge collapse so that false claims could be made by Hennepin County to obtain" some $250 million in "[f]ederal disaster relief, grants, congressional and other stimulus funding." Compl. ¶¶ 16, 21. They further allege that Hennepin County "contaminated an active disaster scene" and that the head of the Minnesota Department of Transportation ("MNDOT"), defendant Molnau, "abused her authority and committed numerous illegal acts and quid pro quo political dealings to cover up the cause of the . . . bridge collapse so that false claims could be made." *Id.* ¶¶ 18, 23. Relators are particularly concerned that false claims were made about "foreign materials and labor" used in the bridge reconstruction, in violation of the Buy American Act, and that this foreign steel created problems requiring additional government expenditures. *Id.* ¶¶ 29, 33.

In all three of Relators' FCA cases, the Government has declined to intervene. *Davis I*, 2016 WL 10747256, at *1; *Davis II*, 2017 WL 4475938, at *1; Not. of Election to Decline Intervention [ECF No. 20]. Relators' two previous cases ultimately were dismissed without prejudice because of Relators' pro se status. *See Davis I*, 2016 WL 10747256, at *2 ("[C]ourts have uniformly held that non-lawyers may not litigate qui tam

actions on behalf of the United States." (citations omitted)); *Davis II*, 2017 WL 4475938, at *2 ("Relators are not permitted to bring this *qui tam* FCA case as *pro se* parties.").

Relators have secured legal representation in their current case. *See* Compl. ¶ 1. As a result, instead of filing another "suggestion of dismissal" on the grounds that Relators cannot proceed pro se, the Government has filed a motion to dismiss. ECF No. 10. Shortly after filing its motion to dismiss, the Government filed a notice of election to decline intervention. ECF No. 20. Since that time, the case has been unsealed and Relators have been ordered to serve their complaint upon the Defendants. ECF No. 21. Relators evidently have not yet done so. *See* Longrie Decl. ¶ 8 [ECF No. 24] (declaration of Relators' attorney, Diana Longrie, stating that "[Relators] have a meritorious FCA action and with the case now unsealed, we are ready to serve the Defendants and proceed with the case"); *see also* Docket (containing no summons returned executed). Accordingly, only Relators and the Government have appeared in the action and at oral argument on the motion to dismiss. *See* Min. Entry [ECF No. 33]; *see also* 31 U.S.C. § 3730(c)(2)(A) (making no mention of defendants' involvement in the hearing on the Government's motion to dismiss).

II

The Government seeks dismissal pursuant to 31 U.S.C. § 3730(c)(2)(A). Mem. in Supp. at 1. Section 3730(c) of the FCA is entitled "Rights of the parties to qui tam actions," and subsection (c)(2)(A) provides: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been

notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."

The Parties' disputes arise out of the potential ambiguities caused by § 3730(c)(2)(A)'s failure of expression: May the Government dismiss an action if it has declined to intervene? And is the Government's right to dismiss absolute, or conditioned upon satisfying some standard, such as rational basis? These are questions of statutory interpretation that are resolved as a matter of law. *See Smythe v. City of Onamia*, No. 12-cv-3149 (ADM/LIB), 2014 WL 4096966, at *4 (D. Minn. Aug. 19, 2014) ("Statutory interpretation is a matter of law, and the outcome in general does not rely on the facts of any one case." (citing *Wingert & Assocs., Inc. v. Paramount Apparel Int'l, Inc.*, 458 F.3d 740, 743 (8th Cir. 2006) ("We review questions of statutory interpretation de novo."))). There is no binding Supreme Court or Eighth Circuit precedent on these issues, but the Parties have identified the leading cases: *Sequoia Orange* from the Ninth Circuit, and *Swift* from the D.C. Circuit. *See Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir. 2003); *U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139 (9th Cir. 1998).

A

The first issue is whether the Government may dismiss a case in which it has declined to intervene. Put another way, must the Government intervene to obtain dismissal? Relators maintain that the "language, structure, and legislative history" of § 3730(c)(2)(A) "do not expressly or impliedly authorize the United States to outright dismiss a qui tam action they have not intervened in." Mem. in Opp'n at 2–3 [ECF No.

22] (stating "[t]he United States gave up the driver's seat when they declined to intervene"). The Government's position is that the statutory dismissal provision "applies equally to intervened and declined claims, so that the United States may dismiss a claim after declining to intervene." Mem. in Supp. at 2–3.

On this threshold question, *Sequoia Orange* is not directly on point because the Government did intervene there before seeking dismissal. *See* 151 F.3d at 1141. Nonetheless, in dicta, the Ninth Circuit recognized that "[n]othing in § 3730(c)(2)(A) purports to limit the government's dismissal authority based upon the manner of intervention" and the statute "may permit the government to dismiss a qui tam action without actually intervening in the case at all." *Id.* at 1145 (citing *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993)).

*Swift* is more apposite, as that case involved a motion to dismiss that was filed "without purporting to intervene." 318 F.3d at 251. The same is true of the present case, except that here, the Government also subsequently filed a notice confirming it did not intend to intervene. ECF No. 20. In *Swift*, the D.C. Circuit interpreted the FCA dismissal provision to contain no intervention requirement. 318 F.3d at 251 ("As is evident from the [statutory] quotation, the provision does not say that the government must intervene in order to seek dismissal."). The court focused on how the only purpose of intervention is to "proceed with the action," 31 U.S.C. § 3730(b)(2), and "[e]nding the case by dismissing it is not proceeding with the action"—to "proceed" would mean "that the case will go forward with the government running the litigation." *Swift*, 318 F.3d at 251 (citation

omitted). If the Government does not intend to proceed, and only wants to dismiss, then there is no reason for intervention. *See id.*

Two years after *Swift*, the Tenth Circuit weighed in, deciding in *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925 (10th Cir. 2005), that intervention is not a prerequisite to dismissal. *Ridenour*, 397 F.3d at 940. In that case, the Government declined to intervene and subsequently filed a motion to dismiss. *Id.* at 928–29. (This is the reverse order of the instant case, but it is nonetheless analogous because the Government sought to dismiss without having intervened.) The *Ridenour* court "decline[d] to construe the FCA as requiring intervention for cause before dismissal because a plain reading of the statute does not require it, canons of statutory construction do not support such a result, and in our view, such a reading would render the FCA constitutionally infirm." *Id.* at 932.

The surrounding provisions and context of the entire statutory section support the conclusion reached by each of these courts that intervention is not required by the plain terms of § 3730(c)(2)(A). *See U.S. ex rel. Zissler v. Regents of Univ. of Minn.*, 154 F.3d 870, 875 (8th Cir. 1998) (interpreting the FCA and stating that a "section of a statute should not be read in isolation from the context of the whole Act, and . . . [the court] must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law" (second alteration in original) (citations and internal quotation marks omitted)). Zooming out from § 3730(c)(2)(A), § 3730(c) sets forth the "[r]ights of the parties to qui tam actions." Subsection (c)(1) begins with the clause "[i]f the Government proceeds with the action," and subsection (c)(3) begins with the clause "[i]f the Government elects not to proceed with the action." But the intervening subsection (c)(2),

at issue here, is not prefaced by any limiting clause—which the Legislature elected to use elsewhere in the statute. *See* 31 U.S.C. § 3730(c)(4) ("Whether or not the Government proceeds with the action . . . ."). At the risk of redundancy, subsection (c)(2)(A) is not nested underneath one of the provisions addressing the parties' rights "[i]f the Government proceeds" or "[i]f the Government elects not to proceed." Instead, the provision stands independently, and makes no mention of dismissal being affected by, let alone predicated upon, the Government's decision to intervene. This statutory structure undercuts Relators' argument that "§ 3730(c)(2), when read in conjunction with . . . § 3730(c)(1), is operable *only* when the Government has elected to intervene." Mem. in Opp'n at 4. *But see Juliano v. FADA*, 736 F. Supp. 348, 351 (D.D.C. 1990) ("[T]his section, by its placement in the statute, appears to pertain to actions in which the government has already intervened . . . ."), *aff'd*, 959 F.2d 1101 (D.C. Cir. 1992); *Ridenour*, 397 F.3d at 942 (Eagan, J., dissenting in part and concurring in part) (same) (quoting *Juliano*, 736 F. Supp. at 351); *see also Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000) (describing in dicta how if the Government intervenes, "it assumes primary responsibility for prosecuting the action, . . . though the relator . . . is entitled to a hearing before voluntary dismissal," whereas "[i]f the Government declines to intervene . . . the relator has the exclusive right to conduct the action" (internal citations omitted)).

Based on the plain language and context of the statute, there is no requirement that the Government intervene in order to pursue dismissal under § 3730(c)(2)(A). Regardless, as the *Swift* court noted, the proper timing of dismissal and intervention is a "largely academic" question. 318 F.3d at 252; *see also U.S. ex rel. Levine v. Avnet, Inc.*,

No. 2:14-cv-17, 2015 WL 1499519, at *4 n.5 (E.D. Ky. Apr. 1, 2015) ("[R]eading § 3730(c)(2)(A) to require intervention elevates form over substance." (citing *Swift*, 318 F.3d at 252)). It is, after all, comparatively easy for the Government to timely intervene or to seek to intervene at a later date for the purpose of dismissing an action. *See* 31 U.S.C. § 3730(b)(2)–(4), (c)(3) (requiring "a showing of good cause" for extensions of the time to intervene and late intervention).

B

Although the circuit courts agree that dismissal is not contingent on intervention, they disagree on the standard of review for dismissal: whether dismissal under § 3730(c)(2)(A) is conditioned on any standard at all, and if so, what that standard is. To be sure, the "statute itself does not create a particular standard for dismissal." *Sequoia Orange*, 151 F.3d at 1145.

1

The Ninth Circuit in *Sequoia Orange* was the first circuit court to take up the question of what standard applies to district courts considering motions to dismiss by the Government under § 3730(c)(2)(A). The court recognized that the Government "has the right to dismiss the action, notwithstanding the relator's objection" as long as there is notice and a hearing as required by the statute, but it nonetheless approved of the district court's fashioning of a further standard of review—a two-step rational-relation test. *Sequoia*

*Orange*, 151 F.3d at 1144–45.¹ *Sequoia Orange* borrowed from the rational-basis analysis that is used to assess whether executive action violates substantive due process.² *Id.* at 1145.

> A two step analysis applies . . . to test the justification for dismissal: (1) identification of a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. If the government satisfies the two-step test, the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal.

*Id.* (citations and internal quotation marks omitted).

The Ninth Circuit concluded that the Government had presented a rational basis for its dismissal, including its "concern with litigation costs." *Id.* at 1146 ("[T]he government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs." (citation omitted)). Even conceding that the *qui tam* action was meritorious, the Government could dismiss an action so long as there was a valid government purpose. *See id.* at 1145–47. The Tenth Circuit and Eastern District of Arkansas have taken the same approach. *See Ridenour*, 397 F.3d at 936 ("The district court here applied [the *Sequoia Orange*] standard, and we adopt it. In our view, it . . . protects

---

¹ Although the Parties and other courts have cited *Sequoia Orange* as establishing a binding standard, technically all the Ninth Circuit did was conclude that "[t]he district court acted reasonably in adopting th[is] . . . standard." 151 F.3d at 1145.

² This opinion uses "rational relation" and "rational basis" interchangeably, as the *Sequoia Orange* rational-relation test was imported from the rational-basis standard of scrutiny that governs certain challenges under the Fourteenth Amendment to legislative and executive action.

10

the rights of relators to judicial review of a government motion to dismiss." (footnote omitted)); *United States v. Fiske*, 968 F. Supp. 1347, 1354–55 (E.D. Ark. 1997) (deeming the Government's proffered reason for dismissal, "that the allegations are without merit," as "a legitimate governmental reason" and concluding that "dismissal is rationally related to the Government's desire to clear from the Court docket a meritless claim").

2

In *Swift*, the D.C. Circuit reviewed the district court's grant of the Government's motion to dismiss. *See* 318 F.3d at 251. Although the district court had applied the *Sequoia Orange* test, the D.C. Circuit on appeal held that the Government has "an unfettered right to dismiss." *Id.* at 252 ("[W]e cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment in this regard."). The court cited four bases for its rejection of *Sequoia Orange*:

> (1) the separation of powers doctrine, (2) the Government's broad discretion in initiating or continuing a criminal prosecution, (3) Federal Rule of Civil Procedure 41(a)(1)(i), which permits a plaintiff to dismiss a civil action "without order of the court," and (4) the language of section § 3730(c)(2)(A) itself, which grants to "[t]he Government" (not the court) unilateral authority to "dismiss the action notwithstanding the objections of the person initiating the action."

*Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008) (quoting *Swift*, 318 F.3d at 252) (recounting the court's holding in *Swift*). The Fifth Circuit has not squarely confronted this same question, but it, too, has observed that the government has the "power to take the . . . radical step of unilaterally dismissing the defendant." *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 160 (5th Cir. 1997) (citations omitted).

11

The Eighth Circuit has not squarely confronted this question, but dicta in two of its FCA opinions hint that it might, if faced with the issue, agree with the *Swift* approach. *See Zissler*, 154 F.3d at 872 (holdingthat "the United States is the real party in interest because of its significant control over the course of the litigation," including its "considerable control over the dismissal and settling of the case"); *U.S. ex rel. Rodgers v. Arkansas*, 154 F.3d 865, 868 (8th Cir. 1998) (stating that "[t]he Government also has the power to dismiss [or settle] the action . . . subject only to notice and a hearing for the *qui tam* relator," in addressing the question on appeal of whether the State was entitled to Eleventh Amendment immunity from FCA suits (second alteration in original) (internal quotation marks omitted)).

But even the *Swift* court applied *Sequoia Orange* in the alternative. *Swift*, 318 F.3d at 254 ("Even if *Sequoia* set the proper standard, the government easily satisfied it."). The D.C. Circuit determined that the asserted government interests were legitimate, including that "the dollar recovery was not large enough to warrant expending resources monitoring the case, complying with discovery requests, and so forth, and that spending time and effort on this case would divert scarce resources from more significant cases." *Id.*

3

Against this backdrop of *Swift* and *Sequoia Orange*, it is appropriate to return to the language of the statute itself. When dealing with matters of statutory interpretation, "[it] is well established that [the court] commence[s] . . . with the statute's plain language. Where the language is plain, [the court] need inquire no further." *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006) (citations omitted). The dismissal

provision in § 3730(c)(2)(A) provides that "[t]he Government may dismiss the action . . . if the [relator] has been notified by the Government of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion." The statute's plain language does not constrain the Government's right to dismissal on any other standard or showing. As the *Swift* court held, it is an "unfettered" right. 318 F.3d at 252. Thus the "standard of review" is a simple two-part inquiry: (1) Was relator notified of the motion? and (2) Did relator have an opportunity for a hearing?

Constitutional considerations, including the separation of powers, counsel the same result. If district courts were to impose any additional constraints on dismissal, they would effectively be policing the Government's right to dismiss, interfering with prosecutorial discretion in violation of an important separation-of-powers principle. *See, e.g.*, *Swift*, 318 F.3d at 253 ("Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States. The provision . . . [does not] circumscribe[] the government's power to discriminate among issues or cases it will pursue." (citation and internal quotation marks omitted)); *Juliano*, 736 F. Supp. at 351 ("Under our federal scheme, the Attorney General . . . decides whom to prosecute for violations of federal law. The Court will not assume that the qui tam provisions of the False Claims Act were intended to curtail the prosecutorial discretion of the Attorney General."); *United States v. Fleet Bank of Me.*, No. 93-cv-165, 1995 WL 626376, at *3 (D. Me. Sept. 13, 1995) (referencing how "the executive branch's discretionary role in pursuing [FCA] recoveries" is "not limited" and is exercised by, for example, seeking dismissal of the case (citations omitted)); *Kelly*, 9 F.3d at 753 (discussing

how "the Executive Branch can control a qui tam relator's exercise of prosecutorial powers in several ways," including "mov[ing] for dismissal of a case"); *Levine*, 2015 WL 1499519, at *4 n.4 ("[B]oth the Sixth Circuit and the Fifth Circuit also highlighted the government's right to dismiss as one of the Executive Branch's necessary means for exercising 'sufficient control' over a *qui tam* action." (citing *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *accord Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001)).

Notably, the Supreme Court has characterized the FCA "as effecting a partial assignment of the Government's damages claim." *Vt. Agency of Nat. Res.*, 529 U.S. at 773 (footnote omitted). So although relators (as assignees), have standing to pursue FCA claims on behalf of the Government (the assignor), *see id.*, "[t]he Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*," *id.* at 771–72 (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). When the Government has indicated it no longer seeks redress, and instead seeks dismissal of the action, it certainly would appear as if there is no longer an ongoing case or controversy; the judiciary is without power to act, beyond ensuring that the safeguards provided in § 3730(c)(2)(A) have been satisfied. *See id.* at 772 (describing how relators are "entitle[d] . . . to a hearing before the Government's voluntary dismissal of the suit").

The thrust of the entire statute is that the Government is the real party in interest and can dismiss so long as the relator receives due process—notice and an opportunity for a

hearing.³  And the Eighth Circuit's FCA jurisprudence suggests that it, too, would recognize that the Government is in the driver's seat, not the relator or the Court. *See Zissler*, 154 F.3d at 872 (discussing "the extensive power the government has to control the litigation," how "the relator has no interest in the matter whatever except as [a common informer]," and that the government "must be recognized as the real party in interest" (alteration in original) (citations and internal quotation marks omitted)); *Rodgers*, 154 F.3d at 868 (referencing how "[a] great deal of Section 3730 establishes as *superior* the role of the government in the prosecution of *qui tam* suits" (emphasis added)).

4

Applying this two-part statutory standard, it is clear that the Relators were notified of the motion and received the opportunity for a hearing. *See* Not. of Hearing [ECF No. 11]; Not. to Attorney [ECF No. 30] (text-only order ensuring one of two Relators could participate in the hearing remotely by telephone); Min. Entry (hearing attended by Relators and counsel). The statute requires nothing more or less.

Even if the *Sequoia Orange* rational-relation test applied, the Government would be entitled to dismissal. The Government's proffered reason for dismissal is that this case is likely to cause "a great deal of burden and expense for the United States, with no resulting

---

³ It is also notable that this motion-to-dismiss hearing was a public hearing, exposing the Executive branch to public scrutiny. Although some courts have characterized such a hearing as affording the relator one final chance to "convince the government not to end the case" or to persuade the court that dismissal is improper, *see Swift*, 318 F.3d at 253, the hearing serves another purpose: to give the relator *and the public* an opportunity to put, and to observe, the Government's prosecutorial discretion in the spotlight and make a public record of the Government's desire to dismiss the action.

recovery." Mem. in Supp. at 1. There is certainly precedent for this cost-benefit analysis being a legitimate governmental reason and that dismissal is rationally related to that objective. *See Sequoia Orange*, 151 F.3d at 1146 (referring to "internal staff costs" (citation omitted)); *e.g.*, *U.S. ex rel. Stovall v. Webster Univ.*, No. 3:15-cv-03530, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (recognizing the Government's "interest in preserving scarce resources by avoiding the time and expense necessary to monitor this action" and rejecting relator's argument that "the anticipated financial gain outweighs the anticipated time and money to be expended on this case"); *U.S. ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (crediting the Government's proffered cost-benefit analysis and position that proceeding would "cost the United States more in expenses than it can possibly recover").

Nor can Relators overcome this rational-basis showing by "demonstrat[ing] that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 151 F.3d at 1145. Relators contend that the Government, through its counsel, "is biased and is acting in an arbitrary and capricious manner" by pursuing dismissal in retaliation for a professional-misconduct complaint that Relators filed concerning an Assistant U.S. Attorney. Mem. in Opp'n at 8. But Relators have not provided evidence in support of this argument beyond conclusory declarations. *See* Westley Decl. ¶ 15 [ECF No. 23] ("It is my belief that this ethics complaint created a negative relationship with the local U.S. Attorney [sic] office and is the basis for this motion to dismiss."); Longrie Decl. ¶ 4 (expressing counsel's belief that "personalities appeared to overshadow the merits of the claim" based on her interactions with AUSA Chad Blumenfeld). Nor have Relators come forward with

any specific data or documents that would suggest the Government is sweeping an otherwise meritorious claim under the rug in an effort to cover up the alleged conspiracy. Accordingly, under *Sequoia Orange* as under *Swift*, dismissal is warranted. *See also Nicholson*, 2011 WL 2683161, at \*3 ("The government's cost-benefit calculation may be sound or it may be short-sighted, but it cannot be deemed arbitrary and capricious.").

III

In responding to the Government's motion to dismiss, the Relators also petitioned for an evidentiary hearing. Mem. in Opp'n at 8–10. They appear to seek a hearing only if the motion to dismiss is granted. *See id.* at 10 ("Relators respectfully requests [sic] this Court DENY the motion to dismiss or, in the alternative, to GRANT Relator's [sic] Petition for an evidentiary hearing . . . prior to the Court rendering its decision."). Setting aside the procedural issues with Relators' request (*e.g.*, that they did not properly file this as a motion or ask for a hearing date), their request will be denied for substantive reasons.

Although § 3730(c)(2)(A) expressly provides for a hearing when the Government seeks dismissal, the statute does not mandate an *evidentiary* hearing. *See* 31 U.S.C. § 3730(c)(2)(A) (providing only for "a hearing on the motion"). Relators cite no statutory basis for their requested evidentiary hearing, nor does the FCA elsewhere provide for such a hearing.[4] As previously discussed, all that is required is notice and an opportunity for a

---

[4] It appears that the origin of Relators' request for an evidentiary hearing may be a Senate Judiciary Committee report regarding the 1986 amendments to the FCA. *See* S. REP. NO. 99-345, at 26 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5291. Because the statute is unambiguous, there is no need to consider this legislative history. *See Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[Courts] do not resort to legislative history to cloud a statutory text that is clear." (footnote omitted)). Even if the Court were to look

17

hearing. In the absence of any authority for holding an evidentiary hearing, Relators' request will be denied. *Cf. United States v. Chappell*, No. 09-cr-139 (JNE/JJK), 2011 WL 607385, at *6 (D. Minn. Feb. 10, 2011) (denying motion for a new trial where party "cite[d] no authority" and "provide[d] no explanation in support of his motion" and "made [no] mention of this argument" at the hearing).

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Government's Motion to Dismiss [ECF No. 10] is **GRANTED**.

2. Relators' Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 13, 2019
s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court

---

past this problem and disregard the infirmities often associated with legislative history, this legislative history does not provide a basis for Relators' requested evidentiary hearing. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) ("Legislative history is problematic even when the attempt is to draw inferences from the intent of duly appointed committees of the Congress. It becomes far more so when [courts] consult sources still more steps removed from the full Congress . . . ."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 374–89 (2012) ("As for committee reports, they are drafted by committee staff and are not voted on (and rarely even read) by the committee members, much less the full house."). The Senate Judiciary Committee did contemplate that a *qui tam* relator's objection to the Government's motion to dismiss "may be accompanied by a petition for an evidentiary hearing." *Id.* But this portion of the Committee report "relates to an unenacted Senate version of the 1986 amendment," which had expressly provided for "an evidentiary hearing" for the relator to "object to . . . any motion to dismiss filed by the Government. *Swift*, 318 F.3d at 253 (alteration in original) (citation omitted). It is therefore not persuasive authority for Relators' request.